# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 16-72113-JWC |
| | ) | |
| D & N ELECTRIC, A CARTER | ) | |
| BROTHERS COMPANY, | ) | |
| | ) | CHAPTER 7 |
| Debtors. | ) | |
| | ) | |
| IN RE | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY, | ) | CHAPTER 7 |
| SERVICES, LLC. | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MOTION TO APPROVE SETTLEMENT AND COMPROMISE AND SALE

COMES NOW Robert Trauner as Chapter 7 Trustee for the estate of Carter Brothers Security Services, LLC, ("CBSS"), and Tamara Ogier as Chapter 7 Trustee for the estate of D&N Electric, A Carter Brothers Company, Ch.7 Case No. 16-72113 ("D&N"), and bring this Motion to Approve Settlement and Compromise pursuant to F.R.Bankr,P. 9019 (the "Motion"), resolving actions brought on behalf of the bankruptcy estates against John Carter, individually, Carter Brothers Services, LLC, Carter Brothers, LLC, and CBC Partners, LLC (collectively the "Defendants"). Brightwood Capital SBIC II, L.P. ("SBIC II") and Brightwood Capital Advisors, LLC (BAC, and together with SBIC II, "Brightwood") are also joining in this Motion and the proposed settlement to the extent of their involvement in Adversary Proceeding No. 19-05241.[1]

---

[1] Although Brightwood is a defendant in Adversary Proceeding No. 19- 05241, for purposes of this Motion and the proposed settlement, Brightwood is not defined as one of the "Defendants".

1

FH5165424.2

This Motion also addresses claims by and between the bankruptcy estates pertaining to each estate's interest in the monies and property that is the subject of the complaints filed against Defendants and Brightwood.   Trustees respectfully show the Court as follows:

## I.      Jurisdiction & Venue

1.

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Sections 105, 331, 363, 502(b), 502(d) and 510(c) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 2016, 3007, 6004 and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## II.     Factual Background

2.

The above styled Chapter 7 cases are intertwined by ownership, transactional history, operations and legal issues concerning transfers by the respective estates.  D&N was filed as a Chapter 11 case on December 11, 2016.  The D&N estate continued to operate as a Chapter 11 debtor-in-possession until Tamara Ogier was appointed as trustee.  Mrs. Ogier moved for conversion of the case to Chapter 7, which motion was granted in an order dated August 30, 2018.  CBSS filed a voluntary petition for relief under Title 11 U.S.C., Chapter 7, on July 10, 2018.  Robert Trauner was assigned as trustee for CBSS.  Collectively, the trustees for these bankruptcy estates are referred to herein as "Trustees".

FH5165424.2

3.

D&N and CBSS are affiliates by virtue of common ownership and management. These two Debtors were operated by a single individual, Mr. John Carter. Mr. Carter is the 99% owner of CBSS. CBSS is the majority shareholder of D&N, holding 60% of its outstanding equity. The two debtors are affiliates under the terms of the Bankruptcy Code. 11 U.S.C. § 101(2). Carter Brothers Services, LLC, Carter Brothers, LLC and CBC Partners, LLC are legal entities under the ownership and control of Mr. Carter. Debtors' financial records and tax returns reflect numerous intercompany transactions, which alternate between debt and equity from year to year. Debtors' records also show numerous transfers by and between the Debtors and the Defendants.

4.

There are substantial questions concerning the transactions between Debtors and Defendants, characterization of these transactions as debt, equity and capital and the proper relationship between these various parties, for purposes of relevant claims under Title 11. Both Debtors paid debts of other companies related to John Carter and ostensibly engaged in transactions with related companies, which the Trustees have alleged were fraudulent. Both Debtors have their own creditor bases and neither assets nor liabilities are identical, albeit overlapping in some instances. Both Trustees are investigating the financial affairs of their respective debtor estates. Trustees' forensic accountant has reviewed all available records and has concluded that both of the debtor companies were insolvent as of January of 2014.

5.

Trustees allege Mr. Carter withdrew significant amounts of monies from these two debtor estates within the four years prior to the Debtors' respective bankruptcy cases. Additional significant transfers were made to affiliated companies doing business with the Debtors, which

3

FH5165424.2

makes up the balance of the Defendants. Trustees contend that total funds transferred to Mr. Carter and the remaining Defendants over the relevant periods total not less than $3,407,619.00, discussed further below. Because of the intertwined operations, transactions and transfers of monies by and between these debtor companies, the Court approved the Trustees' efforts to hire single counsel to pursue certain overlapping causes of action.

## III.    The Claims

6.

Mr. Carter, in addition to his affiliates, have filed several proofs of claim in the D&N bankruptcy case (the "Claims"), which are also resolved by this Settlement Agreement. These include, in the D&N case:

Claim No. 68, MGA Holdings filed in the amount of $560,052.00.

Claim No. 78, John F. Carter filed in the amount of $3,815,034.00.

## IV.    The Adversary Proceedings

7.

Trustees have brought the following adversary proceedings, (the "Adversary Proceedings") against Mr. Carter and his affiliated companies. Each of the Adversary Proceedings alleges that the Debtors made conveyances of property of the Debtors to Mr. Carter and his affiliates, which are recoverable pursuant to 11 U.S.C. §§ 544, 548 and 550. The Adversary Proceedings also include state law causes of action pursuant to O.C.G.A. § 18-2-70, et.seq. The Adversary Proceedings being resolved include the following, which are described further below:

a)  Adversary Proceeding No. 19-5241, Ogier & Trauner v. Brightwood Capital SBIC II, Brightwood Capital Advisors, LLC, John Carter and Internal Revenue Service.

4

Adversary Proceeding No. 19-5241, *Ogier & Trauner v. Brightwood, et.al.* . (the Brightwood Adv. Pro.) concerns the transfer of funds belonging to the estates into an investment fund in exchange for a limited partnership interest, held by Carter Brothers Security Services, LLC and then transferred to John Carter, individually. These funds totaled $600,000.00 originating from Carter Brothers Security Services, LLC and $300,000.00 originating from D&N, A Carter Brothers Company, for a total of $900,000.00. On or about August of 2016, Mr. Carter caused the limited partnership interest to be transferred into Mr. Carter's name, without consideration. This investment consisted of a limited partnership interest in SBIC II, a private fund managed by BAC. This fund has a target date for winding down in the year 2022, with a possible extension until the year 2025.

Following the transfer of the limited partnership interest to Mr. Carter, Brightwood Capital Advisors, LLC issued two K-1's to the IRS for the year 2016, reflecting the transfer of ownership from the Debtor CBSS to Mr. Carter, personally. In June of 2019, the Internal Revenue Service, based upon the notice provided to it by Brightwood, issued a notice of levy seeking to seize the funds from the limited partnership interest for application against John Carter's personal tax liabilities. The Internal Revenue Service has also filed several proofs of claim in the Debtors' bankruptcy cases.

SBIC II and BAC have initiated what they refer to as an interpleader action concerning the limited partnership interest and made representations to the Court that they assert no ownership interest in the subject asset. However, these entities retain possession of distributions from the limited partnership interest in the sum of $111,881.00 from SBIC II's investments as of May 15, 2020 (the "Frozen Disbursements") awaiting adjudication of the interpleader action and no monies or other assets have been deposited into the registry of the Court to date. Brightwood continues to

5

hold the distributions on account of the limited partnership interest in what it refers to as a custodial capacity, subject to this Court's Order concerning ownership of the asset. The Trustees assert that the limited partnership interest holds a residual value of $734,204.00 as of March 31, 2020, pursuant to the disclosures provided by the Brightwood entities.

By this settlement, Mr. Carter concedes the Trustees' allegations made in the Complaint, and admits that the transfer of ownership of the limited partnership interest identified in the Complaint is void pursuant to 11 U.S.C. §§ 544, 548, 550 and O.C.G.A. 18-2-70, et.seq.  Mr. Carter abandons any defenses thereto and consents to judgment returning the limited partnership interest to the estates.  As part of this settlement, Trustees will sell the estates' interest in this limited partnership interest to a group of investors, referred to herein as Mr. Carter's designee, free and clear of liens or other interests pursuant to 11 U.S.C. § 363(f), subject to regulatory approvals and transfer requirements in the governing limited partnership agreement and documents related thereto, the consideration for which is reflected in the settlement amount herein. Mr. Carter warrants and represents that he holds neither a legal nor an equitable interest in such designee. See attached Affidavit of John Carter at Exhibit "B".

SBIC II and BAC have asserted a contractual right to recoup attorney fees associated with the transfer of the limited partnership interest to Mr. Carter and for those fees incurred in defense of the adversary proceeding in the amount of $240,000.00.  The settling parties have agreed to resolve this claim for attorney fees by allowing the Brightwood entities to retain $50,000.00 of the $111,881.00 currently held in Frozen Disbursements and to provide Brightwood with allowed general unsecured claims in each of the bankruptcy estates of Carter Brothers Security Services, LLC and D&N Electric, A Carter Brothers Company in the amount of $111,881.00.

6

FH5165424.2

In its Answer to the Trustees' Complaint, the United States [the IRS], has admitted that "[i]n the event that the CBSS funds are determined to be property of the bankruptcy estates, the United States agrees that the Service may not levy upon those funds or otherwise utilize them to satisfy John Carter's personal tax liabilities." Answer of United States, Preliminary Statement at p.2 and ¶ 42-44 at p.6. [Dk. No. 10]. The IRS claims, therefore, are entirely derivative of Mr. Carter's now abandoned ownership claims and the IRS does not assert an independent claim of lien or otherwise to the limited partnership asset. Other than the notice of levy on Mr. Carter's assets sent to Brightwood, the IRS has not asserted any claims, liens or otherwise against Brightwood. The IRS has not asserted that it has provided any consideration to Mr. Carter as part of its levy attempt and has admitted that it had actual knowledge of the transfer of property from CBSS to Mr. Carter before it made its levy attempt. Indeed, this foreknowledge was what prompted the attempt at levy in the first place. Mr. Carter's admissions and stipulations herein voiding the transfer to Mr. Carter also resolves the IRS claims as to the asset as a matter of law. 11 U.S.C. § 548(c). The admissions, stipulations and terms of this Settlement Agreement resolve the issues and claims raised in Adversary Proceeding No. 19-5241.

However, the IRS has expressed a concern that joining in the Settlement Agreement may compromise or impair its claims against Mr. Carter, personally. As of the date of this pleading, the IRS has not expressed the intent to object to this settlement and has expressed no objections as to the merits of the compromise of claims as they pertain to these estates, stated herein. However, the Trustees and Defendants have procured the attached Exhibit "B" to address the expressed concerns of the IRS that the funds utilized to fund the settlement of claims may be funds that the IRS may be able to reach in its own collections efforts against Mr. Carter, personally. While this would not be a basis for denial of the proposed Settlement Agreement, the Trustees and Defendants

FH5165424.2

seek to assure the IRS that its claims against Mr. Carter based on his personal tax liability remain intact and its future collections are not compromised. Since this settlement does not release any claims by the IRS against Mr. Carter and the source of funds for the asset purchase do not belong to Mr. Carter, the IRS cannot be said to have its claims against Mr. Carter impaired factually or legally.

Furthermore, the settlement is in the best interests of the IRS as a creditor of these bankruptcy estates. The IRS has filed proofs of claim in the D&N bankruptcy case asserting priority unsecured claims in the amount of $29,722,252.00 and claims in the CBSS case asserting $90,458.32 priority and $68,909.84 general unsecured claims.[2] The recovery provided for in the Settlement Agreement will enhance the IRS' collection efforts on the claims against the estates. Moreover, the settlement is generating dollars far and away more than could be obtained by selling the investment asset individually. The Trustees are compromising additional claims that will fund not only the priority claims of the IRS, but the general unsecured claims of all creditors, including the IRS. Absent the bankruptcy cases, the IRS would be taking the same steps to recover the asset addressed in this litigation as the Trustees have taken, in order to satisfy their claims against the Debtors. The Court's inquiry concerning the best interests of creditors must be confined to the best interests of *creditors of these estates*, and not based upon separate collections claims that creditors may have against the Defendants that were sued by the Trustees. Although the IRS has not joined in this settlement for reasons stated above, Trustees submit the Settlement Agreement remains in their own best interest as a creditor of these estates.

  b) Adversary Proceeding No. 19-5242, <u>Ogier & Trauner v. Carter Brothers Services, LLC and Carter Brothers LLC</u>.

---

[2] Trustees have not reviewed these claims as of yet and they remain subject to review and objection.

Adversary Proceeding No. 19-5242, *Ogier & Trauner v. Carter Brothers Services, LLC and Carter Brothers LLC*, is based upon transfers to the Defendants by D&N in the amount of $1,264,127.77, and to the Defendants by CBSS in the amount of $45,492.00. Both Defendants in this action are not currently operating. Trustees contend that the transfers to these entities were to or for the benefit of John Carter and that Debtors received no consideration or less than reasonable consideration for these transfers. Mr. Carter and the Defendants have denied the allegations in this Adversary Proceeding, but agree to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

Upon information and belief, the Defendants in this Adversary Proceeding are defunct and without assets to satisfy a judgment. Upon obtaining a judgment, the Trustees would be required to attempt to collect on said judgment, leading to another round of litigation, with uncertain results. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

c) Adversary Proceeding No. 19-5244, <u>Ogier & Trauner v. CBC Partners, John Carter and John Does, 1-10</u>.

Adversary Proceeding No. 19-5244, *Ogier & Trauner v. CBC Partners, John Carter and John Does, 1-10* is based upon transfers to the Defendants by D&N in the amount of $3,000 and transfers to the Defendants by CBSS in the amount of $45,000. Both Defendants in this action are not currently operating. Trustees contend that the transfers to these entities were to or for the benefit of John Carter and that Debtors received no consideration or less than reasonable consideration for these transfers. Mr. Carter and the Defendants have denied the allegations in this Adversary Proceeding, but agree to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

9

FH5165424.2

Upon information and belief, the Defendants in this Adversary Proceeding are defunct and without assets to satisfy a judgment. Upon obtaining a judgment, the Trustees would be required to attempt to collect on said judgment, leading to another round of litigation, with uncertain results. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

d) Adversary Proceeding No. 19-5246, <u>Ogier & Trauner v. John Carter.</u>

<u>Adversary Proceeding No. 19-5246</u>, *Ogier & Trauner v. John Carter* is based upon transfers to Mr. Carter by D&N in the amount of $800,000 and to Mr. Carter by CBSS in the amount of $350,000. Trustees contend that Debtors received no consideration or less than reasonable consideration for these transfers. Mr. Carter and the Defendants have denied the allegations in this Adversary Proceeding, but agree to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

Upon information and belief, the Defendant in this Adversary Proceeding has limited assets held in his own name, has significant existing debt and litigation pending. Upon obtaining a judgment, the Trustees would be required to attempt to collect on said judgment, leading to another round of litigation, with uncertain results. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

**V.      Settlement Terms**

8.

This settlement is intended to be a "global" resolution of claims involving the Defendants and resolves both pending litigation and any additional claims that could be brought by the Trustees or the Defendants.

10

9.

The Settlement Agreement is attached hereto as Exhibit "A". Pertinent terms of note are as follows:

*Payment and Other Consideration.* Within thirty days of the Order approving this settlement being a final order not then subject to appeal, Defendants will make payment of One Million One Hundred Thousand Dollars ($1,100,000.00) to counsel for the Trustees in resolution of the estate claims against Defendants and Brightwood raised in the Adversary Proceedings. There are no financing contingencies and Defendants profess the current ability to procure funds sufficient to fund this Settlement Agreement as described herein and in the Attached Exhibits "A" and "B". Payment as called forth herein is in partial consideration for resolution of the estates' claims in the Adversary Proceedings. Additional consideration between Trustees and Defendants includes sale of the limited partnership interest, subordination of debt and substantial assistance in remaining matters being brought by the Trustees, jointly or severally.

As part of this settlement, the Trustees are transferring the estates' interests in the limited partnership interest together with the Frozen Disbursements and any other withheld funds from the capital account associated with the limited partnership interest but not including the Brightwood Fee Component to the group of investors referred to herein as Mr. Carter's designee. Upon closing of the sale transaction, Brightwood shall be entitled to offset the sum of Fifty Thousand Dollars ($50,000.00) from the withheld distributions   (the "Brightwood Fee Component") and shall be entitled to file general unsecured claims in each of the Debtors' estates

11

FH5165424.2

in the amount of $111,881.00 each. Such claims will be deemed to be allowed general unsecured claims for purposes of distribution in these cases.

In exchange for the consideration stated in the Agreement, and as part of the resolution of the claims by and among the parties hereto, Brightwood has agreed to use commercially reasonable efforts to submit appropriate documentation to the SBA for its approval of the transfer upon receipt from the purchaser of complete, satisfactory documentation necessary for the transfer.

*Disposition of Limited Partnership Interest.* Because the property identified in the Brightwood complaint, discussed above, is being returned to the estates, and these cases are proceeding under Chapter 7, the Trustees must jointly sell the asset for the benefit of the respective estates' creditors. This is true regardless of to whom the assets are sold. As of March 31, 2020, the capital account ledger balance for the limited partnership interest was in the amount of $734,204.00, with the additional sum of $111,881.00 consisting of the Frozen Disbursements.

Trustees have investigated the relevant market and have concluded that in order to sell the asset to a third party, the asset would have to be discounted by between 20% and 50% of its current face value. Accordingly, the estates would ultimately recover between $367,000.00 and $587,000.00 for this asset. This market deduction reflects the age of the investment relative to its life cycle, broker's commissions, the limited market for the investment vehicle, the current economic/market conditions and substantial difficulty that the Trustees anticipate in a public marketing effort. The Brightwood entities insist that the investment terms are confidential and that any purchaser must be satisfactory to Brightwood including that it must satisfy the requirements as a "qualified investor" and be approved by the SBA. Considering the asserted confidential nature of disclosures necessary to find a buyer and the likelihood of ongoing litigation with Brightwood

12

just to sell the asset, selling to a third party through a broker would result in substantial delays costing the estates both time and money.

Mr. Carter and Defendants, as part of this resolution of claims, have committed to procure a purchaser for the limited partnership interest from the estates, without the discounts necessary for a separate marketing effort by the Trustees. The source of funds for this transaction, therefore, is an investor group that has agreed pay the funds necessary to resolve this litigation. As a matter of disclosure, Mr. Carter has neither a legal nor equitable interest in the entity obtaining the asset via this sale, as disclosed in the attached Exhibit "B" affidavit. However, insofar as the identity of the investors are not relevant to the purchase price and value of the asset being sold, the Trustees have agreed to sell the subject asset to the investors Mr. Carter has agreed to procure. The sale will not be consummated until the purchasers satisfy all the steps necessary for the transfer of the limited partnership interest and any disbursements therefrom, including without limitation, a subscription agreement, transfer document and approval by the United States Small Business Administration.

Although consideration for the sale of this asset is incorporated into the full payment amount being made under this Agreement, the asset sale accounts for $734,204.00 of the total consideration being paid to the estates under this negotiated Settlement Agreement. The Trustees consider this to be a premium over and above the ultimate return possible from a brokered sale to another third party. Therefore, consideration to the estates from selling this asset to Mr. Carter's investor designees will exceed that which could have been obtained from any other third party sale by between $147,000.00 and $367,000.00, in addition to the avoidance of professional fees and costs associated with further litigation and sales efforts.

13

On this basis, Trustees have agreed to sell this asset, plus intercepted disbursement funds less the Brightwood Fee Component, to Mr. Carter's investors designee pursuant to 11 U.S.C. § 363(f). The estates have no secured creditors. The remaining parties to the Brightwood litigation, described above, do not have an interest in the subject asset. The Brightwood entities have represented in their interpleader filings that they are in the nature of a custodian with respect to the Frozen Disbursements and have no ownership interest in the subject limited partnership interest. This Settlement Agreement, therefore, resolves their involvement in this Adversary Proceeding and the Trustees will release them from any claims pertaining to that Complaint with dismissal of this adversary proceeding.

The only other party, the IRS, is pursuing a debt owed by Mr. Carter, individually, and their asserted interest in this matter is premised upon debts owed by Mr. Carter, individually. The IRS has voiced concerns as to whether the source of the payment to the Trustees called for herein is any asset that they can claim in their own collection actions against Mr. Carter, individually. Although the prospects of the IRS' own collections activity against Mr. Carter, individually, is not relevant to the approval of this Agreement, the Trustees have attempted to address the IRS' concerns and procured the attached affidavit at Exhibit "B" from Mr. Carter disclaiming any personal interest in the entity supplying the funds in order to consummate this settlement. Accordingly, the Court may enter an order approving the sale of the subject asset pursuant to 11 U.S.C. § 363(f). Because this resolution avoids the significant discount associated with sale to another third party, and more reasonably approximates a transaction by which the asset would have been sold for its reasonably equivalent value at the time of the original transfer, the Trustees have agreed to this term of the Settlement Agreement.

FH5165424.2

*Third Party Claims.* This settlement is not intended to address any claims of third parties pursuing a claim against Mr. Carter, or the remaining Defendants, individually. If any such parties possess claims against the bankruptcy estates, they must file a proof of claim subject to objection and receive distributions as provided for by the Bankruptcy Code.

*Specific Stipulations and Terms.* The following stipulations of fact and terms are essential elements of the settlement, and closing of this settlement is contingent upon these conditions being met.

a) Specifically, and concerning existing litigation in Adversary Proceeding No. 19-5241, the parties agree that the limited partnership interest identified therein is property of the estate within the meaning of 11 U.S.C. § 541. The property was transferred to Mr. Carter in violation of 11 U.S.C. § 548(a)(1)(A), that no consideration was paid to the estates in violation of 11 U.S.C. § 548(a)(1)(B) and that the property is recoverable from Mr. Carter pursuant to 11 U.S.C. § 550(a)(1). Mr. Carter concedes the specific factual allegations contained in the Trustees' Complaint and consents to judgment accordingly returning the asset to the estate for disposition.

b) The subject asset identified in Adversary Proceeding No. 19-5241 shall be deemed returned to the bankruptcy estates for administration according to the terms of the Bankruptcy Code simultaneous with the sale to the asset purchaser as provided for herein. Trustees shall sell the limited partnership interest to investors designated by Mr. Carter, as part of this settlement, at face value, without discount and free and clear of liens pursuant to 11 U.S.C. § 363(f) but subject to the requirements for transfer under the applicable limited partnership agreement and applicable laws, rules and regulations.

15

FH5165424.2

c) No provision is made for payment of claims of attorney fees by any party to any of the Adversary Proceedings, except as provided herein, including without limitation, the Birghtwood Fee Component.

d) Neither the Trustees, nor John Carter, are aware of any other claimants asserting an interest in the limited partnership interest identified in Adversary Proceeding No. 19-5241, or any other interest in the funds identified in the various Adversary Proceedings.

*Trustee Claims As Between The Estates.* The Trustees acknowledge competing estate claims raised against the Defendants in the Adversary Proceedings. Pursuant to the operation of the Debtors, as identified in the Complaints, assets were transferred by and between the estates and estate claims are shared in common against each of the Defendants named herein. As a result, Trustees sought and obtained Court approval to pursue these assets jointly. To that end, the Trustees have agreed to divide the proceeds of this estate as provided herein and to seek an appropriate Order of the Court pursuant to F.R.Bankr.P. 9019 approving disposition of settlement proceeds as between the two bankruptcy estates.

Considerations in support of Trustees' proposed settlement as between the estates are as follows and are agreed upon by the Trustees for purposes of this settlement:

a) The provenance of the limited partnership interest described herein was with both Debtors. The Carter Brothers Security Services, LLC estate funded $600,000 of the total investment. The D&N, A Carter Brothers Company estate funded $300,000 of the total investment. However, the limited partnership interest was owned by Carter Brothers Security Services, LLC and voidable transfers concerning the limited

FH5165424.2

partnership interest identified herein to John Carter were made by Carter Brothers Security Services, LLC.

b)  The total value ascribed to the limited partnership interest by Mr. Carter is its current face value of $734,204.00. Pursuant to the Trustees due diligence, the asset would need to be discounted by between 20% and 50% of its face value were it to be sold to a third party, assuming that the Trustees were able to adequately describe the asset over the objection of Brightwood, et.al., who assert privilege concerning the terms of the limited partnership agreement.  The asset in question consists of a limited partnership interest in a fund making debt and equity investments in small businesses located within the United States.  The Trustees believe the asset may be at risk of depreciating in the current economic environment and disposition of the asset is necessary to prevent any further potential erosion of value.  Brightwood makes no representation as to the accuracy of the foregoing sentence. The sale to Mr. Carter avoids value discounts, avoids further litigation with the other parties to that action and provides for the transfer to a buyer that must satisfy the requirements as qualified investor by Brightwood and the SBA. The Trustees agree that the sale of the subject asset to Mr. Carter as provided for herein is in the best interest of their respective estates.

c)  The Trustees believe that the remaining adversary proceedings are against defunct entities and Mr. Carter, individually.  Due to the perceived collectability of such judgments, the Trustees have agreed to accept the balance of the settlement proceeds in the amount of $365,567 in resolution of the rest of the Adversary Proceedings described herein. The Trustees' agreement is based largely on the collectability of any judgment and the prospect of further litigation without a foreseeable superior net result.

17

d) Total claims by the estates that are being resolved herein are as follows: D&N holds claims against Defendants totaling $2,217,127.77 and CBSS holds claims against Defendants totaling $1,190,492.00, for a grand total of $3,407,619.00.

e) Due to the intermingling of Debtors' funds and transfers by and between the estates, division of settlement proceeds by estates is problematic, which fact is reflected in the Trustees joint pursuit of the Adversary Proceedings. Both estates funded the limited partnership interest being sold and both estates have an interest in obtaining a recovery concerning the balance of the Adversary Proceedings, which would not otherwise be resolved on terms acceptable to the Trustees absent continuing litigation and collection efforts for the foreseeable future.

f) In consideration for receipt of settlement proceeds as described herein, and resolution of competing claims of the Trustees to the available funds, the Trustees have agreed to divide the settlement proceeds herein with $575,000 attributed to the estate of Carter Brothers Security Services, LLC and $525,000 attributed to the estate of D&N Electric, A Carter Brothers Company. This settlement resolves the competing interests of the two bankruptcy estates in a reasonable manner and prevents disputes as between the two estates that would otherwise prevent the settlements with the Defendants from taking place.

g) Upon approval of this agreement by the Court, the Trustees each, on behalf of their estates, release one another from all manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages,

18

losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Trustees now have or may hereafter have against their respective estates that were, or have been, or could, in any way have been claimed or alleged against premised upon claims against the Defendants.

*Continuing Advice and Support.*  Mr. Carter and the Defendants have agreed to provide continuing support, document review, claims review and testimony in all pending and future actions brought by the Trustees.  Mr. Carter and Defendants agree to do so without the need for subpoena or other means of compulsion beyond the consideration already provided herein upon request of the Trustees, and without witness fee or other means of compensation for time spent. The estates will not be liable for any of Mr. Carter's costs or attorney fees in fulfilling this covenant.  Mr. Carter and Defendants stipulate to the facts as identified in the Adversary Proceedings being resolved herein and agree to testify consistent with such stipulations in any and all future lawsuits, depositions, affidavits or other means by which the Trustees attempt to recover on claims of the estates.  The Trustees are pursuing a large number of actions on behalf of the bankruptcy estates, and the cooperation provided by Mr. Carter and Defendants going forward will be of great value to the estates in reducing these claims ultimately to dollars and disbursements for the estates' creditors.

*Subordination of Claims.*  Any and all claims filed or to be filed by Mr. Carter, the Defendants or other affiliates in these cases are subordinated to all other debt in these cases, of any kind and nature, and such claims remain subject to objection by the Trustees.

*Dismissal of Adversary Proceedings.*  Following payment of the funds as provided for herein, the Trustees will file motions seeking dismissal of the pending Adversary Proceedings,

19

FH5165424.2

with prejudice, pursuant to F.R.Bankr.P. 7041. As stated herein, this Settlement Agreement does not purport to resolve any claims by any parties against Mr. Carter or any of the Defendants independent of the estate's causes of action resolved by this Settlement. However, to the extent that any parties wish to continue collection activities or pursue claims against Mr. Carter, individually, there will no longer be a jurisdictional predicate to maintain any action against Mr. Carter or the Defendants before the United States Bankruptcy Court. Of all the Adversary Proceedings, Trustees believe this pertains only to adversary proceeding no. 19-5241. To the extent that Trustees may obtain consent to dismissal pursuant to F.R.Bankr.P. 7041(a)(1)(A), Trustees will do so. Otherwise, Trustees will seek dismissal of the Adversary Proceedings pursuant to F.R.Bankr.P. 7041(a)(2). However, payment of the settlement funds to the Trustees under this Agreement is not contingent upon the Court's Order dismissing any pending actions against Mr. Carter or the other Defendants, individually.

## VI.    Legal Argument and Applicable Standards

Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "on motion by the trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed.R.Bankr.P. 9019(a). The Eleventh Circuit has determined the standard for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) as set forth in Wallis v. Justice Oaks II, Ltd., 898 F.2d. 1544 (11th Cir. 1990) as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. Id. at 1549.

20

FH5165424.2

In these matters, the probability of success of the litigation is high, in the Trustees' opinions, but the difficulties of collection, the complexity of the litigation, the delay and the interests of creditors all weigh in favor of approving the settlement.

*Probability of Success.* The Trustees believe they will establish their prima facie cases in these Adversary Proceedings. The transfers took place. The transfers went to the parties identified in the Adversary Proceedings. The Trustees' forensic accountants have concluded that the Debtors were insolvent at the time of the transfers. The Defendants provided either no consideration or problematic alleged value, in the Trustees' opinions, for the transfers. The transfers were made while the principal of these corporate debtors had actual knowledge of the Debtors' insolvency. The transfers were made to insiders with the intent of paying insiders over arm's length creditors, and to remove assets from the estates and the reach of the estates' creditors.

Although abandoned as part of this settlement, Defendants have alleged that they provided value in exchange for the transfers identified in the Adversary Proceedings. Mr. Carter has alleged the existence of debt instruments and that the transfers of assets from the Debtors to him were in payment of pre-existing debts. Trustees have challenged this alleged value, but it would be a matter of disputed fact requiring a trial over the course of several days to establish.

*Collection Issues.* The Defendants are corporate shells that have in some cases not even answered the Complaints in the Adversary Proceedings. Trustees alleged in the Complaints that these transfers were made for the benefit of the estates' principals and other insiders, but those principals and other insiders are defunct, without assets and upon information and belief formed for the purpose of disguising the parties providing services to third parties and transferring assets. With the exception of the Brightwood litigation, the transfers made were of cash and accounts receivable, without

21

FH5165424.2

separately identifiable assets to locate. Regardless, the Trustees must first obtain judgments against these entities before they may proceed against transferees of those entities. Mr. Carter, himself, professes to be without significant personal assets and has numerous other debts that may be an impediment to collection of any judgment.

*Complexity.* The transfers described in the Adversary Proceedings are complex, involving multiple persons, entities, bank accounts and other sources of evidence needed to prove the Trustees' claims. Debtors, and Defendants, were operated from a single location with similar employees. There were multiple transfers by and between these entities moving monies to satisfy their own debts, debts of related companies and debts of insiders. Establishing legitimate debt repayment, as opposed to fraudulent transfers of assets or other claims has required an immense effort by forensic accounts, attorneys and third parties providing documents needed to sort actionable transfers. Proving the claims themselves, and then pursuing the collection of judgments just pertaining to the Adversary Proceedings, will require significant investment of time and resources to prove at trial. Coupled with the potential need for secondary litigation in the nature of collections, and the Trustees' tasks are doubled. The Trustees' forensic accountant has analyzed the transfers, the Debtors' structures, the multiple bank accounts and other vehicles for movement of monies and concluded that the Debtors' financial affairs were complex and require the ongoing services of an expert to identify and unwind.

*The Interests of Creditors.* The interests of creditors are best served by this settlement. The collection prospects for these actions decrease as time goes by. Assets may be further transferred, assets may devalue and the time value of money suggests an earlier recovery of assets is a superior result as compared to a speculative recovery later. This settlement accomplishes multiple goals, simultaneously. Assets are recovered before they can lose their value, assets are sold for maximum value, claims of insiders are subordinated without additional litigation, the Trustees secure necessary

22

testimony and evidence for additional lawsuits and the potential disputes between the estates themselves over assets has been resolved. In all regards, this settlement serves the interests of the estates and their creditors.

Based on the foregoing, the Court should approve the settlement proposed by the parties and enter an Order pursuant to F.R.Bankr.P. 9019 authorizing the Trustees to take all necessary steps to consummate the transactions described in the Settlement Agreement attached as Exhibit "A".

## VII.    Payment of Compensation

Pursuant to this Court's Orders entered in each of the above-styled bankruptcy cases, the Court authorized the undersigned counsel for the Trustees to pursue the Adversary Proceedings jointly. Compensation was established by Order entered on July 11, 2019, in the Carter Brothers Security Services, LLC case [Dk. No. 40], as being a 40% contingency with certain guarantees. The Order was entered governing representation of both estates. By Order dated December 6, 2019, the Order concerning compensation was modified to allow payment of the guarantee prior to completion of representation. The Trustee for the estate of Carter Brothers Security Services, LLC has paid a total of $15,565.00 towards the guarantee limit of $45,000.00 made part of the terms of employment. Similarly, compensation was established by Order entered on June 19, 2019 in the case of D&N Electric, A Carter Brothers Company, [Dk. No. 218], as being a 40% contingency with certain guarantees. By Order dated December 6, 2019, the Order concerning compensation was modified to allow payment of the guarantee prior to completion of the representation. The Trustee for the estate of D&N has paid a total of $45,000.00 towards the guarantee limit of $45,000.00.

23

Trustees counsel brought nine adversary proceedings as part of this joint representation.[3] All of the Adversary Proceedings being resolved in this pleading are part of the agreed upon joint representation of the Trustees. The Trustees have agreed to divide the settlement proceeds as provided for herein, with the sum of $575,000.00 to the estate of Carter Brothers Security Services, LLC and $525,000.00 to the estate of D&N Electric, A Carter Brothers Company, LLC. Pursuant to the terms of the Court's prior Orders, counsel is entitled to compensation in the amount of $230,000.00 from the settlement proceeds being paid to the estate of Carter Brothers Security Services, LLC. Pursuant to the terms of the Court's prior Orders, counsel is entitled to compensation in the amount of $210,000.00 from the settlement proceeds being paid to the estate of D&N Electric, A Carter Brothers Company, LLC. The total award to counsel as fee from the settlement proceeds is $440,000.00. Counsel has incurred an additional $1,222.88 in costs.

However, pursuant to the terms of the guarantees issued by the estates, the estates are entitled to a credit for amounts previously paid against the guarantees. After application of the credits for the guarantee payments, pursuant to the terms of the Court's prior Orders, counsel is entitled to compensation in the amount of $214,435.00 from the settlement proceeds being paid to the estate of Carter Brothers Security Services, LLC. Proration of costs on the same basis results in reimbursement of expenses in the amount of $635.90 from the Carter Brothers Security Services, LLC estate. After application of the credits for the guarantee payments, pursuant to the terms of the Court's prior Orders, counsel is entitled to compensation in the amount of $165,000.00 from the settlement proceeds being paid to the estate of D&N Electric, A Carter Brothers Company, LLC. Proration of costs on the same basis results in reimbursement of expenses in the amount of $586.98 from the D&N Electric, A Carter

---

[3] These joint matters are separate and distinct from counsel's employment as attorney for the Trustee in the Carter Brothers Security Services, LLC case, which concerns other adversary proceedings, other services and is a traditional hourly engagement.

24

Brothers Company, LLC estate. The total award to counsel sought from the settlement proceeds described in this Motion, under the terms of counsel's engagement and after application of credits, is $380,657.88.

Since counsel was employed on a fixed compensation basis, payment of counsel's fees is governed by 11 U.S.C. § 328(a). Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862-63 (5th Cir. 1997)("If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved. If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.").

When counsel was hired, it was to pursue one known cause of action with an apparent face value of $500,000.00, and to investigate the existence of others. The known cause of action is pending as Adversary Proceeding No. 19-05245, Ogier & Trauner v. Walbridge et.al., and is not part of this Settlement. Although at the time of the engagement the Trustees speculated that other causes of action may exist, they were unwilling to commit to the necessary investigation at counsel's hourly rate or otherwise had no assets in their estates with which to pay counsel. Therefore, the contingency arrangement was created to compensate counsel in the event that the investigation yielded any recoveries, while limiting the estates' exposure in the event that no viable causes of action were discovered. Accordingly, the risk of non-recovery was factored into the fee agreement and borne by counsel as part of this engagement.

FH5165424.2

Case 18-61490-jwc    Doc 125    Filed 08/25/20    Entered 08/25/20 11:59:09    Desc Main
Document      Page 26 of 44

After an exhaustive investigation, aided by the estates' forensic accountants, counsel uncovered numerous transfers and transactions that were either not in the Debtors' books and records or were otherwise not apparent from the records available to the Trustees. Counsel sought and obtained records from numerous prior law firms concerning transactions and representation, prior accountants concerning financial statements and records of transfers, financial institutions concerning missing bank records and debts, creditors of the estates concerning payment of accounts, pre-petition litigants concerning lawsuits, facts and causes of action and other third party sources of information. This settlement agreement is the product of over a year's worth of work by counsel for the Trustees, poring over discovery, obtaining and reviewing thousands of pages of documents from Defendants and other parties, interviewing numerous witnesses, filing dozens of pleadings, responding to pleadings, reviewing investigative reports, negotiating with parties, compelling production of still more records, and ultimately establishing the foundation of this Settlement Agreement.

From the single cause of action known at the time of counsel's engagement, nine lawsuits were eventually filed. The matters being settled in this motion concern four of those nine causes of action. The remainder are still pending and under the same terms of engagement as these now being settled. It was expected that counsel would engage an investigation. However, through counsel's efforts, literally millions of dollars of transfers have been uncovered. Counsel has already more than doubled the expected potential recoveries known at the time of the engagement. Remaining lawsuits undertaken as part of this joint representation total exponentially more potential recoveries. The only unforeseen circumstance, according to the reasoning of the In re Nat'l Gypsum Co. case, was the exceptional result of counsel's investigation and the recoveries from just these matters being settled in this Motion.

26

Absent counsel's effort, the Trustees would never have learned of the transfers at issue in these Adversary Proceedings. To the extent that these recoveries provide a distribution to creditors, such a distribution would not have been possible without counsel's efforts. Counsel is delivering $1,100,000.00 to the estates in this settlement. The results of counsel's efforts have been nothing short of exceptional, and the Court should award counsel the agreed upon fee as part of the terms of this settlement. Trustees request that the Court enter an Order approving the Settlement Agreement and authorizing the Trustees to pay Counsel as stated herein pursuant to the agreed terms concerning Counsel's engagement in these matters.

WHEREFORE, Robert Trauner, Chapter 7 Trustee for the estate of Carter Brothers Security Services, LLC and Tamara Ogier, Chapter 7 Trustee for the estate of D&N Electric, A Carter Brothers Company, respectfully request this Court:

(a) Pursuant to F.R.Bankr.P. 9019, approve the terms of the compromise and settlement of claims as described herein and in the attached Exhibit A, including apportionment of proceeds between the estates;

(b) Pursuant to 11 U.S.C. § 363(f), approve the sale of the limited partnership interest as provided for herein;

(c) Pursuant to 11 U.S.C. §§ 502 and 510, approve the resolution of claims and subordination of same as provided for herein;

(d) Pursuant to 11 U.S.C. § 328(a), approve compensation to counsel for the Trustees under terms of the Court's prior Orders, including apportionment of costs and compensation as between the two estates; and

(e) Grant such other and further relief as the Court may deem just and reasonable.

27

On this date: August 14, 2020.

                     MACEY, WILENSKY & HENNINGS, LLP


                     /s/ Todd E. Hennings
                     Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
thennings@maceywilensky.com
Attorneys for Robert Trauner,
And Tamara Miles Ogier
Chapter 7 Trustees

FH5165424.2

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("the Agreement") is made and executed by and between Robert Trauner as and only as Chapter 7 Trustee for the estate of Carter Brothers Security Services, LLC ("CBSS"), Tamara Ogier as and only as Chapter 7 Trustee for the estate of D&N Electric, A Carter Brothers Company ("D&N") (collectively the "Trustees"), John Carter, individually, Carter Brothers Services, LLC, Carter Brothers, LLC and CBC Partners, LLC (collectively the "Defendants"). To the extent that Brightwood Capital SBIC II, L.P. ("SBIC II") and Brightwood Capital Advisors, LLC ("BAC, and together with SBIC, II, "Brightwood") are defendants in adversary proceeding no 19-5241 (the "Brightwood Adv. Proc."), they are also joining in this Settlement Agreement". Both Trustees and Defendants are referred to herein as the "Parties".[1] This Agreement is entered into with respect to the following facts:

WHEREAS, D&N and CBSS (together, the "Debtors") are affiliates by virtue of common ownership and management. These two Debtors were operated by a single individual, Mr. John Carter. Mr. Carter is the 99% owner of CBSS. CBSS is the majority shareholder of D&N, holding 60% of its outstanding equity.

WHEREAS, Debtors' records reflect numerous intercompany transactions, which alternate between debt and equity from year to year. Trustees' forensic accountant has concluded that the Debtors were insolvent as of the beginning of 2014.

WHEREAS, Mr. Carter withdrew significant amounts of monies from these two debtor estates within the four years prior to the Debtors' respective bankruptcy cases. Additional significant transfers were made to affiliated companies doing business with the Debtors, which makes up the balance of the Defendants. Trustees contend that total funds transferred to Mr. Carter and the remaining Defendants over the relevant periods total not less than $3,407,619.00.

WHEREAS, Mr. Carter contends that during the course of his involvement with CBSS and D&N, he has personally loaned and also made capital contributions to CBSS and D&N in excess of Ten Million Dollars, and that he has defenses to the Trustees' avoidance actions against him.

WHEREAS, there are substantial questions concerning these transactions, characterization of these transactions as debt, equity and capital and the proper relationship between these various parties, for purposes of relevant claims under Title 11. Nevertheless, these cases have not been consolidated and have been assigned to separate trustees. Both Debtors have their own creditor bases and neither assets nor liabilities are identical, albeit they are overlapping in some instances. Both Trustees have been investigating the financial affairs of the Debtors' estates.

WHEREAS, because of the intertwined operations, transactions and transfers of monies by and between these debtor companies, the Court approved the Trustees' efforts to hire single counsel to investigate the companies' transactions and pursue certain overlapping claims. Pursuant to that investigation, Trustees brought several adversary proceedings against the Defendants. These adversary proceedings, including without limitation, the Brightwood Adv. Proc., are the subject

---

[1] Although Brightwood is a defendant in Adversary Proceeding No. 19- 05241, for purposes of the Motion and this Settlement Agreement, Brightwood is not defined as one of the "Defendants".

FH5165248.2



matter of this Settlement Agreement, which also resolves competing claims of the estates to the settlement funds paid hereunder.

WHEREAS, this settlement is intended to be a "global" resolution of claims involving the Defendants and resolves both pending litigation and any additional claims that could be brought by the Trustees. Because the financial affairs of the estates are largely intertwined as to transactions involving the Defendants, the allocation of settlement proceeds is based upon agreement of the Trustees and compromise of estate claims as to each estate. Nothing in this Agreement purports to allocate settlement proceeds as to any particular claim, adversary proceeding or estate, except as stated herein.

WHEREAS, for the purpose of this Agreement, the Trustees have apportioned gross settlement proceeds as between the estates and by mutual agreement join in the resolution of estate claims to the assets identified herein as provided for herein.

WHEREAS Trustees have brought the following adversary proceedings, (the "Adversary Proceedings") which are resolved as to the Trustees, for the bankruptcy estates, and Mr. Carter and his affiliated companies[2]:

    a)  Adversary Proceeding No. 19-5241, <u>Ogier & Trauner v. Brightwood Capital SBIC II, Brightwood Capital Advisors, LLC, John Carter and Internal Revenue Service</u>.
    b)  Adversary Proceeding No. 19-5242, <u>Ogier & Trauner v. Carter Brothers Services, LLC and Carter Brothers LLC</u>.
    c)  Adversary Proceeding No. 19-5244, <u>Ogier & Trauner v. CBC Partners, John Carter and John Does, 1-10</u>.
    d)  Adversary Proceeding No. 19-5246, <u>Ogier & Trauner v. John Carter</u>.

<u>Adversary Proceeding No. 19-5241</u>, *Ogier & Trauner v. Brightwood, et.al.* (the Brightwood Adv. Pro.) concerns the transfer of funds belonging to the estates into an investment in exchange for a limited partnership interest, held by Carter Brothers Security Services, LLC and then transferred to John Carter, individually. These funds totaled $600,000.00 originating from Carter Brothers Security Services, LLC and $300,000.00 originating from D&N, A Carter Brothers Company, for a total of $900,000.00. On or about August of 2016, Mr. Carter caused the limited partnership interest to be transferred into Mr. Carter's name. This investment consisted of a limited partnership interest in SBIC II, a private fund managed by BAC.

In June of 2019, the Internal Revenue Service, having received notice of the transfer of the limited partnership interest from Carter Brothers Security Services, LLC to John Carter, personally, issued a Notice of Levy to SBIC II seeking to seize funds from the limited partnership interest for application against John Carter's personal tax liabilities. The Internal Revenue Service has also filed several proofs of claim in the Debtors' bankruptcy cases. The IRS claim to funds from the limited partnership interest described in the Complaint in the Brightwood Adv. Pro. is predicated upon Mr. Carter's ownership of the limited partnership interest, rather than the Debtors,

---

[2] To the extent Adversary Proceeding No. 19-5241 involves other parties, this Settlement Agreement resolves the estates' interest in litigation and does not purport to resolve claims by or between the balance of the parties except to the extent of the disposition of the investment asset described therein.

- 2 -

and the court approval of this settlement resulting in the termination of the action and voiding the transfer to Mr. Carter also resolves the IRS claims as to the asset. This settlement does not purport to impact the rights of the Internal Revenue Service as to John Carter for his individual income tax liability, except to the extent that this settlement of the Brightwood Adv. Pro. seeks to recover and administer the limited partnership interest and distributions therefrom as property of the bankruptcy estates pursuant to 11 U.S.C. § 541. Neither does this settlement adjudicate the IRS claims as filed against the estates, which have been filed and remain subject to Trustees' review. The sale of the limited partnership interest and distributions therefrom results in the Notice of Levy to Brightwood being moot and inapplicable.

SBIC II and BAC have initiated what they refer to as an interpleader action concerning the limited partnership interest and made representations to the Court that they assert no ownership interest in the subject asset. However, these entities retain the sum of $111,881.00 in frozen disbursements from the investment as of May 15, 2020 (the "Frozen Disbursements") awaiting adjudication of the interpleader motion and no monies or other assets have been deposited into the registry of the Court to date.

By this settlement, Mr. Carter concedes the Trustees' allegations made in the Complaint, and admits that the transfer of ownership of the limited partnership interest identified in the Complaint is voidable pursuant to 11 U.S.C. §§ 544, 548, 550 and O.C.G.A. 18-2-70, et.seq. Mr. Carter abandons any defenses thereto and consents to judgment returning the subject limited partnership interest to the estates. As part of this Agreement, Trustees will sell the estates' interest in this limited partnership interest to Mr. Carter or his designee free and clear of liens or other interests pursuant to 11 U.S.C. § 363(f), subject to regulatory approvals and transfer requirements in the governing limited partnership agreement and documents related thereto, the consideration for which is reflected in the settlement amount herein. Mr. Carter warrants and represents that he holds neither a legal nor an equitable interest in such designee. See Affidavit of John Carter at Exhibit "A".

Adversary Proceeding No. 19-5242, *Ogier & Trauner v. Carter Brothers Services, LLC and Carter Brothers LLC*, is based upon transfers to the Defendants by D&N in the amount of $1,264,127.77, and to the Defendants by CBSS in the amount of $45,492.00. Both Defendants in this action are not currently operating. Trustees contend that the transfers to these entities were to or for the benefit of John Carter. Mr. Carter has denied the allegations in this Adversary Proceeding, but agrees to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

Adversary Proceeding No. 19-5244, *Ogier & Trauner v. CBC Partners, John Carter and John Does, 1-10* is based upon transfers to the Defendants by D&N in the amount of $3,000 and transfers to the Defendants by CBSS in the amount of $45,000. Both Defendants in this action are not currently operating. Trustees contend that the transfers to these entities were to or for the benefit of John Carter. Mr. Carter has denied the allegations in this Adversary Proceeding, but agrees to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

- 3 -

Adversary Proceeding No. 19-5246, *Ogier & Trauner v. John Carter* is based upon transfers to Mr. Carter by D&N in the amount of \$800,000 and to Mr. Carter by CBSS in the amount of \$350,000. Mr. Carter has denied the allegations in this Adversary Proceeding, but agrees to abandon his defenses as a condition of compromise of these disputed claims. The consideration for resolution of this Adversary Proceeding is reflected in the total stated herein.

**NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Brightwood and the Parties agree as follows:

**I. Payment.** The Parties and Brightwood shall seek approval of this settlement by the United States Bankruptcy Court for the Northern District of Georgia (the "United States Bankruptcy Court") by appropriate motion pursuant to F.R.Bankr.P. 9019. Within thirty days of the Order approving this settlement being a final order not then subject to appeal, Defendants will make payment of One Million One Hundred Thousand Dollars (\$1,100,000.00) to counsel for the Trustees in resolution of the estate claims against Defendants and Brightwood. The Parties and Brightwood acknowledge that this Agreement, and all of its component parts, is not effective unless and until approved by Order of the United States Bankruptcy Court. Payment shall be made to counsel for the Trustees and allocated as between the two bankruptcy estates as provided for herein.

In resolution of attorney fee and expense claims asserted by Brightwood in the amount of at least \$240,000.00 related to the Brightwood Adv. Pro., Brightwood shall retain the sum of \$50,000.00 (the "Brightwood Fee Component") from the Frozen Disbursements and may offset this amount from the Frozen Disbursements contemporaneously with payment by the Defendants of the \$1,100,000.00 to the Trustees called for herein. Furthermore, Brightwood shall be entitled to file proofs of claim in the bankruptcy cases of D&N and CBSS in the amount of \$111,881.00 each, which shall be treated as allowed general unsecured claims. The balance of the Frozen Disbursements shall be released to the asset purchaser as part of section II, below contemporaneously with the payments and consummation of the closing of the transfer of the asset as called for herein.

In exchange for the consideration stated herein, and as part of the resolution of the claims by and among the parties hereto, Brightwood shall use commercially reasonable efforts to submit appropriate documentation to the SBA for its approval of the transfer upon receipt from the purchaser of complete, satisfactory documentation necessary for the transfer.

**II. Disposition of Limited Partnership interest.** In partial consideration for the payment of funds by Defendants hereunder, the Trustees shall sell the limited partnership interest identified herein to a group of investors to be designated by Mr. Carter and subject to approval of the United States Small Business Administration (the "SBA"). The transfer of estate assets/interests as called for herein, following return of the assets pursuant to the terms of this Agreement, is intended to be a sale of estate assets pursuant to 11 U.S.C. § 363(f), and this Agreement is contingent upon entry of a final non-appealable Order providing for such a sale. The intent of the Parties is to provide the estates with the value of the funds transferred from the estates without discount, maximizing the return to the estates, and to require Mr. Carter to produce a buyer in resolution of the estate claims that the asset was improperly transferred. The Trustees shall sell all of their rights or

- 4 -

entitlement to the limited partnership interest to the group of investors identified by Mr. Carter, including the balance of Frozen Disbursements, less the Brightwood Fee Component, as referred to herein.

As such, the Trustees and Defendants acknowledge that the payment of the funds by Defendants as called for herein is in partial consideration for the sale of the limited partnership interest. The Parties and Brightwood shall seek an Order of the United States Bankruptcy Court selling the subject asset free and clear of liens or other interests to the prospective buyer, subject to the terms of the applicable limited partnership agreement and regulatory approvals (including without limitation, approval of the transfer pursuant to the sale by the SBA), and this settlement is subject to entry of an Order by the United States Bankruptcy Court approving all terms herein. The Parties and Brightwood acknowledge that this is an essential term of the Agreement.

### III.  Trustees Release of Defendants and Brightwood,

Trustees, on behalf of their respective estates, and in consideration of the total payment by Defendants of $1,100,000.00, paid by or on behalf of Defendants, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, as well as the resolution and release of any claims by Brightwood (other than to the Brightwood Fee Component), except as provided for herein, do hereby fully release and forever discharge Defendants, their disclosed partners, disclosed employees, disclosed insurers, disclosed parent entities, disclosed affiliates, disclosed subsidiaries, disclosed predecessors, disclosed successors in interest, disclosed officers, disclosed directors, disclosed members, disclosed shareholders, disclosed agents, disclosed assigns, and all disclosed persons or entities acting by, through, under, or in concert with it, of and from any manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Trustees now have or may hereafter have against the Defendants  that were, or have been, or could, in any way have been claimed or alleged against Defendants.

Trustees, on behalf of their respective estates, and in consideration of the total payment by Defendants of $1,100,000.00, paid by or on behalf of Defendants, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, as well as the resolution and release of any claims by Brightwood (other than to the Brightwood Fee Component), do hereby fully release and forever discharge SBIC II AND BAC, their respective insurers, parent entities, affiliates, subsidiaries, predecessors, successors in interest, employees, officers, directors, members, shareholders, agents, assigns, partners, and all disclosed persons or entities acting by, through, under, or in concert with either of them, of and from any manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Trustees now have or may hereafter have against Brightwood that were, or have been, or could, in any way have been claimed or alleged against Brightwood, except for claims and obligations except for obligations and claims under, in or arising out of this Agreement.

- 5 -

**IV.  Defendants' and Brightwood's Release of Trustees and the Bankruptcy Estates.**
Defendants and Brightwood, on behalf of themselves and on behalf of their respective insurers, parent entities, affiliates, subsidiaries, predecessors, successors in interest, employees, officers, directors, members, shareholders, agents, assigns, creditors, liquidators, administrators, executors, partners, owners, heirs, and beneficiaries, and in consideration of Trustees' release of all claims against Defendants and Brightwood, and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, do hereby fully release and forever discharge Trustees, the bankruptcy estates as well as the attorneys or other professionals employed by the Trustees from any manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Defendants now has or may hereafter have against the aforementioned entities.  Provided, however that Defendants may file proofs of claim in this case, subject to objection by the Trustees, which Defendants agree shall be subordinated to all other claims against the bankruptcy estates of any kind and any nature. Provided further, that Brigthwood shall retain the Brightwood Fee Component and may file proofs of claim in each bankruptcy estate for the sum of $111,881.00, which claims shall be treated as allowed general unsecured claims for the purpose of distribution, without subordination, but Brightwood shall assert no further interest in the asset being sold by the Trustees pursuant to Section II, above, and Brightwood consents to the sale of the asset without objection but subject to the terms and conditions of the governing limited partnership agreement and regulatory approvals.

**V.  Mutual Release of Claims Between John Carter and Brightwood.**  In exchange for the claims and payment of funds herein to Brightwood, and the release of claims by Brightwood to the asset addressed in Section II, above, Brightwood and Defendants mutually release each other on behalf of themselves and on behalf of their insurers, parent entities, affiliates, subsidiaries, predecessors, successors in interest, employees, officers, directors, members, shareholders, agents, assigns, partners, owners, heirs, and beneficiaries, and in consideration of the payments as called for herein and other valuable consideration, the receipt and adequacy of which is hereby acknowledged, do hereby fully release and forever discharge one another from any manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Defendants or Brightwood now has or may hereafter have against the aforementioned entities, related in any way to the facts and circumstances stated in the Brightwood Adv. Pro, except for obligations and claims under, in or arising out of this Agreement.

**VI.  Third Party Claims.**  This settlement is not intended to address any claims of third parties, except as may pertain to or be contingent upon Mr. Carter's continuing ownership of the asset being returned to the estate.  Nothing herein purports to resolve any of Defendants' individual obligations to any party or to convey jurisdiction to adjudicate such claims, except as pertains to the transfer of the limited partnership interest and Frozen Disbursements (less the Brightwood Fee Component) that is being returned to the estates and those other claims held by the Trustees as representatives of the bankruptcy estates.  Specifically, any claims asserted by the IRS against any of the Defendants are not released or compromised by this Settlement Agreement.  Furthermore, the proofs of claim filed by the IRS in the D&N and CBSS bankruptcy cases remain subject to

- 6 -

review by the Trustees and allowance by the Court, and are not addressed by this Settlement Agreement.

**VII.  Specific Stipulations and Terms.**  The following stipulations of fact and terms are essential elements of the settlement, and closing of this settlement is contingent upon these conditions being met.

a)  Specifically, and concerning existing litigation in the Brightwood Adv. Pro., the parties hereto agree that the limited partnership interest identified therein and Frozen Disbursements are property of the estate within the meaning of 11 U.S.C. § 541.  The property was transferred to Mr. Carter in violation of 11 U.S.C. § 548(a)(1)(A), that no consideration was paid to the estates in violation of 11 U.S.C. § 548(a)(1)(B) and that the property is recoverable from Mr. Carter pursuant to 11 U.S.C. § 550(a)(1).  Mr. Carter concedes the specific factual allegations contained in the Trustees' Complaint and consents to judgment returning the asset to the estate for disposition.

b)  The subject asset identified in the Brightwood Adv. Pro shall be deemed returned to the bankruptcy estates for administration according to the terms of the Bankruptcy Code simultaneous with the sale to the asset purchaser as provided for herein.  The parties hereto will seek an Order of the Court memorializing the stipulations herein and avoiding the transfer to Mr. Carter.

c)  No provision is made for payment of claims of attorney fees by any party to this Agreement, except as provided for herein, including without limitation, the Brightwood Fee Component.

d)  Neither the Trustees, nor Defendants, are aware of any other claimants asserting an interest in the limited partnership interest identified in the Brightwood Adv. Pro., or any other interest in the funds identified in the various Adversary Proceedings.

**VIII.  Trustee Claims As Between The Estates**

The Trustees herein acknowledge competing estate claims raised against the Defendants in the Adversary Proceedings.  Pursuant to the operation of the Debtors, as identified in the Complaints, assets were transferred by and between the estates and estate claims are shared in common against each of the Defendants named herein.  As a result, Trustees sought and obtained Court approval to pursue these assets jointly.  To that end, the Trustees have agreed to divide the proceeds of this estate as provided herein and to seek an appropriate Order of the Court pursuant to F.R.Bankr.P. 9019 approving disposition of settlement proceeds as between the two bankruptcy estates.

Considerations in support of Trustees' proposed settlement as between the estates are as follows and are agreed upon by the Trustees for purposes of this settlement:

a)  The provenance of the limited partnership interest described herein was with both Debtors.  The Carter Brothers Security Services, LLC estate funded $600,000 of the total investment.  The D&N, A Carter Brothers Company estate funded $300,000 of the

- 7 -

FH5165248.2

total investment. However, the limited partnership interest asset was owned by Carter Brothers Security Services, LLC and voidable transfers concerning the limited partnership interest identified herein to John Carter were made by Carter Brothers Security Services, LLC.

b)   The total value ascribed to the limited partnership interest by Mr. Carter is its current face value of $734,204.00. Pursuant to the Trustees due diligence, the asset would need to be discounted by between 20% and 50% of its face value were it to be sold to a third party, assuming that the Trustees were able to adequately describe the asset over the objection of Brightwood, et.al., who assert privilege concerning the terms of the limited partnership agreement. The asset in question consists of a limited partnership interest in a fund making debt and equity investments in small businesses located within the United States. The Trustees believe the asset may be at risk of depreciating in the current economic environment and disposition of the asset is necessary to prevent any further potential erosion of value. Brightwood makes no representation as to the accuracy of the foregoing sentence. The sale to Mr. Carter avoids value discounts, avoids further litigation with the other parties to that action and provides for the transfer to a buyer that must satisfy the requirements as qualified investor by Brightwood and the SBA. The Trustees agree that the sale of the subject asset to Mr. Carter as provided for herein is in the best interest of their respective estates.

c)   The Trustees believe that the remaining adversary proceedings are against defunct entities and Mr. Carter, individually. Due to the perceived collectability of such judgments, the Trustees have agreed to accept the balance of the settlement proceeds in the amount of $365,567 in resolution of the rest of the Adversary Proceedings described herein.

d)   Total claims by the estates that are being resolved herein are as follows: D&N holds claims totaling $2,217,127.77 and CBSS holds claims totaling $1,190,492.00, for a grand total of $3,407,619.00.

e)   Due to the intermingling of Debtors' funds and transfers by and between the estates, division of settlement proceeds by estates is problematic, which fact is reflected in the Trustees joint pursuit of the Adversary Proceedings. Both estates funded the limited partnership interest being sold and both estates have an interest in obtaining a recovery concerning the balance of the Adversary Proceedings, which would not otherwise be resolved on terms acceptable to the Trustees absent continuing litigation and collection efforts for the foreseeable future.

f)   In consideration for receipt of settlement proceeds as described herein, and resolution of competing claims of the Trustees to the available funds, the Trustees have agreed to divide the settlement proceeds herein with $575,000 attributed to the estate of Carter Brothers Security Services, LLC and $525,000 attributed to the estate of D&N Electric, A Carter Brothers Company. This settlement resolves the competing interests of the two bankruptcy estates in a reasonable manner and prevents disputes as between the

- 8 -

two estates that would otherwise prevent the settlements with the Defendants from taking place.

g) Upon approval of this Agreement by the United States Bankruptcy Court, the Trustees each, on behalf of their estates, release one another from all manner of action or actions, claims, demands and causes of action of every kind, nature or description whatsoever, in law or in equity, suits, debts, liens, contracts, agreements, promises, torts, liabilities, injuries, damages, losses, costs or expenses, of any nature whatsoever, known or unknown, fixed or contingent, which Trustees now have or may hereafter have against their respective estates that were, or have been, or could, in any way have been claimed or alleged against premised upon claims against the Defendants and Brightwood.

**IX.  Discharge of All Claims.** The Parties and Brightwood acknowledge and agree that this document applies to all claims that the Parties and Brightwood now or hereafter may have against each other as provided for herein, whether those injuries, losses or damages are known or unknown, foreseen or unforeseen, patent or latent.

**X.  Dismissal of Actions**. Following approval by the United States Bankruptcy Court of the terms of this Agreement  and the sale of the asset and within five days of payment by Mr. Carter as provided for herein, the Trustees shall jointly file a motion to dismiss all Adversary Proceedings against Defendants and Brightwood with prejudice to refiling.

**XI.  Costs and Attorney Fees.** The Parties and Brightwood understand, acknowledge, and agree that they are solely responsible for any and all of their costs, attorney fees, and expenses (except for the Brightwood Fee Component).

**XII.  Advice of Counsel.** The Parties and Brightwood each warrant and represent that in executing this document they have relied on legal advice from the attorneys of their choice, and that the terms of this document and its consequences have been completely read and explained to them by their attorneys, and that they fully understand the terms of this document. The Parties and Brightwood acknowledge and represent that they have been apprised of potential future risks, complications, and costs.

**XIII.  Continuing Advice and Support.**   Mr. Carter and the Defendants shall provide continuing support, document review, claims review and testimony in all pending and future actions brought by the Trustees.  Mr. Carter and Defendants agree to do so without the need for subpoena or other means of compulsion beyond the consideration already provided herein, and without witness fee or other means of compensation for time spent.  If Mr. Carter or Defendants seek advice of counsel, Mr. Carter and Defendants agree to be responsible for his own attorney fees and costs pursuant to performance under this covenant.  Mr. Carter and Defendants stipulate to the facts as identified in the Complaints being resolved herein and agrees to testify consistent with such stipulations in any and all future lawsuits, depositions, affidavits or other means by which the Trustees attempt to recover on claims of the estates.

**XIV.   No Financial Contingencies.**   Except as provided for herein, there are no contingencies upon performance of the respective obligations of the Trustees. Mr. Carter and the Defendants represents that they have the financial ability to close on this settlement transaction as

- 9 -

called for herein and are not otherwise under any constraints concerning the payments called for herein.

**XV.   No Strict Construction.** The Parties and Brightwood understand and acknowledge that the language of this document shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any party given rights hereunder, regardless of who drafted or is principally responsible for drafting this document or any specific term or condition hereof. This Agreement shall be deemed to have been drafted by all parties given rights herein, and no person, firm or party hereto shall urge otherwise. The he Parties and Brightwood further acknowledge that they had a sufficient and reasonable amount of time to consult with counsel prior to executing this Agreement.

**XVI.   Headings and References**. The captions and headings of the sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement. Unless the context of this Agreement clearly requires otherwise: (a) references to the plural include the singular, the singular the plural, and the part the whole, (b) references to one gender include all genders, (c) "or" has the inclusive meaning frequently identified with the phrase "and/or," (d) "including" has the inclusive meaning frequently identified with the phrase "including but not limited to" or "including without limitation," and (e) references to "hereunder," "herein" or "hereof" relate to this Agreement as a whole. Section, subsection, exhibit and schedule references are to this Agreement as originally executed unless otherwise specified. Any reference herein to any statute, rule, regulation or agreement, including this Agreement, shall be deemed to include such statute, rule, regulation or agreement as it may be modified, varied, amended or supplemented from time to time. Any reference herein to any person shall be deemed to include the heirs, personal representatives, successors and permitted assigns of such person.

**XVII.   Entire Agreement**. The Parties and Brightwood  hereby declare, warrant, and represent that the consideration recited herein is the sole consideration and there has been no promises, representations, inducements, or agreements made except as contained in this Agreement. This document, the documents providing for the sale contemplated herein, the motions seeking approval of the settlement and the sale, and any orders of the Bankruptcy Court approving this Agreement and the sale embodies and sets forth the entire agreement and understanding between the parties relating to the subject matter hereof. This document merges and supersedes all prior discussions, agreements, understandings, representations, conditions, warranties, covenants, and all other communications between the parties relating to the subject matter hereof.

**XVIII.   No Oral Modification or Amendment.** This Agreement may not be modified or amended orally. Any addition, deletion, change, amendment, or modification of this Agreement must be in writing and signed by all parties.

**XIV.   Applicable Law.** The terms and provisions of this document shall be construed according to and governed by the laws of the State of Georgia, without regard to its conflict of law principles.

**XV.   Venue.** Any action concerning the interpretation or implementation of this Agreement, arising from, or relating to, the terms or provisions of this document shall be litigated in the United States Bankruptcy Court.

- 10 -

**XVI. Execution.** The Parties and Brightwood acknowledge and warrant that execution of this document is voluntary and free of duress of any kind or nature.

This Agreement may be executed in any number of original counterparts, each of which shall be deemed to be an original.

**IN WITNESS THEREOF,** the undersigned signed their names to this Agreement, this _____ day of _____ 2020.

Robert Trauner, as and only as Chapter 7 Trustee for CARTER BROTHERS SECURITY SERVICES, LLC

Date: _____

By: _____

Its: _____

Tamara Ogier, as and only as Chapter 7 Trustee for D&N ELECTRIC, A CARTER BROTHERS COMPANY

Date: _____

By: _____

Its: _____

John Carter, individually and on behalf of Carter Brothers Services, LLC, Carter Brothers LLC and CBC Partners, LLC

Date: _____

By: _____

Its: _____

- 11 -

FH5165248.2

Brightwood SBIC II , L.P.

By:  Brightwood Capital SBIC Managers II, LLC,
its General Partner

Date: _____

By: _____

Its: _____


Brightwood Capital Advisors, LLC

By: _____

Date: _____

Its: _____

- 12 -

FH5165248.2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE<br>D&N ELECTRIC, A CARTER BROTHERS<br>COMPANY,<br>    Debtor | CASE NO. 16-72113-JWC<br>CHAPTER 7 |
| IN RE<br>CARTER BROTHERS SECURITY SERVICE,<br>LLC.<br>    Debtor | CASE NO. 18-61490-JWC<br>CHAPTER 7 |

## AFFIDAVIT OF JOHN CARTER

COMES NOW JOHN CARTER who, after being duly sworn by an officer authorized to administer oaths, testifies on his personal knowledge to the following:

1. I am more than 18 years of age, suffer from no disability and am competent to give testimony.

2. I am a named defendant in Adversary Proceedings brought by the Trustees in the above referenced Chapter 7 Bankruptcy Cases.

3. On June 17, 2020 I met with counsel for the Trustees and agreed upon terms to resolve all of the Trustees' claim against me, subject only to Bankruptcy Court Approval ("the Settlement").

4. One of the terms of the Settlement is for the Trustee to be paid the sum of $1,100,000.00.

5. Another of the terms of the Settlement is for the Trustees to transfer the Chapter 7 Estates' interest in a limited partnership administered by Brightwood Capital SBIC II, and/or Brightwood Capital Advisors, LLC (which interests are referred hereinbelow as "the Trustees' Brightwood interest") to me or to my assignee free and clear of liens.

1



EXHIBIT
B

6. Another of the terms of the Settlement is that the allocation of funds from the Settlement are to be determined by the trustees, subject to Bankruptcy Court approval.

7. I have located investors who desire to acquire the Trustees' Brightwood interest and to whom I wish to assign the Trustees' Brightwood interest.

8. None of the funds to be used in acquiring the Trustees' Brightwood interest will be coming from my personal funds or from any entity in which I have a controlling interest.

9. I will not hold a legal or equitable interest in the entity, whether now existing or later created, that will be acquiring the Trustees' Brightwood interest.

**FURTHER AFFIANT SAYETH NOT.**

JOHN CARTER

Sworn to and subscribed before me
This 10 day of July 2020.

Notary Public
(SEAL)

TINA L. JONES
Notary Public, Georgia
Henry County
My Commission Expires
November 14, 2020

2

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO. 16-72113-JWC |
| D & N ELECTRIC, A CARTER | ) | |
| BROTHERS COMPANY, | ) | |
| | ) | CHAPTER 7 |
| Debtors. | ) | |
| | ) | |
| IN RE | ) | CASE NO. 18-61490-JWC |
| | ) | |
| CARTER BROTHERS SECURITY, | ) | CHAPTER 7 |
| SERVICES, LLC. | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

### NOTICE OF PLEADING, DEADLINE TO OBJECT AND FOR HEARING

Tamara Ogier and Robert Trauner, Chapter 7 trustees in the above cases, have filed papers with the court seeking approval of a settlement agreement pursuant to Fed.R.Bankr.P. 9019 governing the following adversary proceedings:  Adversary Proceeding No. 19-5241, Ogier & Trauner v. Brightwood Capital SBIC II, Brightwood Capital Advisors, LLC, John Carter and Internal Revenue Service; Adversary Proceeding No. 19-5242, Ogier & Trauner v. Carter Brothers Services, LLC and Carter Brothers LLC; Adversary Proceeding No. 19-5244, Ogier & Trauner v. CBC Partners, John Carter and John Does, 1-10; Adversary Proceeding No. 19-5246, Ogier & Trauner v. John Carter.

Pursuant to General Order No. 24-2018, the Court may consider this matter without further notice or a hearing if no party in interest files a response or objection within twenty-one (21) days from the date of service of this notice. **If you object to the relief requested in this pleading, you must timely file your objection with the Bankruptcy Clerk** at:

United States Bankruptcy Clerk
United States Bankruptcy Court and U.S. Courthouse,
1340 Richard Russell Federal Bldg.,
75 Ted Turner Drive SW, Atlanta, GA 30303

and serve a copy on the movant's attorney at:

Todd E. Hennings

Macey, Wilensky & Hennings, LLP
5500 Interstate Parkway North, Suite 435
Sandy Springs, GA 30328

and any other appropriate persons by the objection deadline. The response or objection must explain your position and be actually received by the Bankruptcy Clerk within the required time.

A hearing on the pleading has been scheduled for **September 17, 2020**, at **11:00 a.m.** in Courtroom **1203**, United States Bankruptcy Court, Richard B. Russell Federal Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, 30303. Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone. If an objection or response is timely filed and served, the hearing will proceed as scheduled. **If you do not file a response or objection within the time permitted, the Court may grant the relief requested without further notice or hearing** provided that an order approving the relief requested is entered at least one business day prior to the scheduled hearing. If no objection is timely filed, but no order is entered granting the relief requested at least one business day prior to the hearing, the hearing will be held at the time and place as scheduled.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

Dated: August 20, 2020

MACEY, WILENSKY & HENNINGS, LLP


/s/ Todd E. Hennings
Todd E. Hennings, Bar No. 347302

5500 Interstate North Parkway
Suite 435
Atlanta, GA 30328
(404) 584-1234
(404) 681-4355- Facsimile
thennings@maceywilensky.com